Filed 7/20/26  Marosi v. TriCo Bancshares CA6

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| GILBERT MAROSI et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> TRICO BANCSHARES, <br><br> Defendant and Respondent. | H051989, H052506 <br> (Santa Clara County <br> Super. Ct. No. 22CV406644) |
| GILBERT MAROSI et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> TRICO BANCSHARES, <br><br> Defendant and Appellant. | H052427 |

These three appeals involve a dispute over the titling of property.  In 2013, Gilbert Marosi and Cecilia Marosi (collectively, the Marosis)[1]

---

[1] For clarity, we refer to the Marosis by their first names when we refer to them individually.

purchased real property located on Alamitos Road in San Jose (the property). They financed the purchase with a loan from FNB Bancorp, which later merged with TriCo Bancshares (TriCo).[2]  TriCo prepared documents, which the Marosis signed, titling the property in the name of "The Living Trust of Gilbert and Cecilia Marosi, dated March 9, 1983, amended March 4, 1985 and June 5, 2008" (hereafter the Marosi Trust[3]).

In 2022, the Marosis brought suit against TriCo, alleging that TriCo breached its contract with them by titling the property in the name of the trust instead of them as individuals.  The trial court ruled that the applicable statutes of limitation had passed as to all causes of action and sustained TriCo's demurrer without leave to amend.  The court entered judgment against the Marosis and later awarded attorney fees to TriCo (fee order) and taxed some, but not all, of TriCo's requested costs (costs order).

Alleging that the Marosis' complaint was frivolous and filed in bad faith, TriCo sought sanctions against the Marosis under Code of Civil Procedure[4] section 128.5.  The trial court denied the motion (sanctions order).

In their appeal from the judgment, the Marosis assert that the trial court committed error in sustaining the demurrer without leave to amend. The Marosis also appeal the court's fee and costs orders, contending that they are procedurally and legally flawed.  In its appeal, TriCo challenges the court's denial of its motion for sanctions.

---

[2] The parties do not dispute that TriCo is the successor in interest to FNB Bancorp, and we hereafter refer to FNB Bancorp and TriCo, individually and collectively, as TriCo.

[3] The "Marosi Trust," as used in the opinion, includes (and does not distinguish among) various iterations of the trust's name that appear throughout the record.

[4] All further unspecified statutory references are to the Code of Civil Procedure.

For the reasons set out below, we affirm the judgment, the fee order, and the sanctions order. We reverse the costs order and remand to the trial court with directions to tax certain requested costs.

## I. FACTS AND PROCEDURAL BACKGROUND[5]

### A. *Facts*

Gilbert and Cecilia Marosi are married and, at the time of the purchase of the property, were trustees of a trust entitled "the Living Trust of Gilbert and Cecilia Marosi dated March 9, 1983, as Amended March 4, 1985 and May 19, 2009."

Around May 2013, the Marosis entered into an agreement (the purchase agreement) with Twin Creek Properties LLC (Twin Creek) to buy the property. Under the terms of the purchase agreement, at the close of escrow, the Marosis would "receive a grant deed conveying title" in the property and title in the property would "vest as designated in [the Marosis'] supplemental escrow instructions." Fidelity National Title Company of California (Fidelity) was the Marosis' escrow agent for the purchase of the property.

In October 2013, Twin Creek signed a grant deed documenting the transfer of the property from Twin Creek to the Marosis as " '[t]rustees of the Living Trust of Gilbert and Cecilia Marosi, dated 3/9/83 and amended

---

[5] Our summary of the facts is drawn from the allegations in the Marosis' original complaint, first amended complaint, and second amended complaint. "In reviewing a ruling sustaining a demurrer without leave to amend, we assume the truth of the properly pleaded factual allegations and the matters properly subject to judicial notice." (*Committee for Sound Water & Land Development v. City of Seaside* (2022) 79 Cal.App.5th 389, 393–394.) We do not, however, assume the truth of " ' "contentions, deductions or conclusions of fact or law." ' " (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6.)

3/4/85' " (the grant deed). The grant deed recorded by Fidelity included at the end of the name of the Marosi Trust the handwritten words "and June 5, 2008."

The Marosis obtained a loan from TriCo to purchase the property. TriCo entered into a business loan agreement (the loan agreement) with the Marosis in their individual capacities and as trustees of "The Living Trust of Gilbert and Cecilia Marosi under the provisions of a trust agreement dated March 9, 1983." The purpose of the loan agreement was to facilitate the grant of a commercial loan from TriCo to the Marosis.

The loan agreement's term commenced on October 18, 2013, and "continue[s] in full force and effect until such time as all of [b]orrower's [l]oans in favor of [l]ender have been paid in full, including principal, interest, costs, expenses, attorneys' fees, and other fees and charges, or until such time as the parties may agree in writing to terminate this [a]greement." Under the terms of the loan agreement, the Marosis' obligations remained in force "until such time as [b]orrower's [i]ndebtedness shall be paid in full, or until this [a]greement shall be terminated in the manner provided above, whichever is the last to occur."

The Marosis also signed, individually and as trustees of the Marosi Trust, escrow instructions from TriCo that instructed Fidelity to arrange for the Marosis (individually and as trustees of the Marosi Trust) to execute documents pertaining to the loan, including a trust certificate, the loan agreement, and a deed of trust. The escrow instructions identified the borrower as the Marosis individually and as trustees of "The Living Trust of Gilbert and Cecilia Marosi under the provisions of a trust agreement dated March 9, 1983."

4

On October 22, 2013, Fidelity presented the Marosis with various documents to sign, including the loan agreement, the escrow instructions, and the deed of trust. Some of the documents presented requested the Marosis' signatures "as individuals and/or as trustees" of the Marosi Trust. The Marosis purchased the property in October 2013.

In April 2017, the Marosis' son, Ricardo, caused to be recorded with the Santa Clara County Clerk-Recorder an affidavit of change of trustee (the April 2017 affidavit) of the Marosi Trust. The April 2017 affidavit stated that Ricardo succeeded Gilbert and Cecilia as trustee on March 23, 2017, and it attached a "resignation of trustees" (capitalization & underscoring omitted) that Gilbert and Cecilia had signed. The April 2017 affidavit stated that the Marosi Trust held interest in the property.

On June 2, 2017, Ricardo signed, as trustee of the Marosi Trust, a transfer deed (later recorded with the Santa Clara County Clerk-Recorder) conveying the property to an entity called 23760 Alamitos Road LLC.

On or about December 29, 2017, First American Title Insurance Company (First American) sent to the Marosis at their personal address a notice of default and election to sell under deed of trust (notice of default). The notice of default informed the Marosis that the property was in foreclosure because they were behind in their loan repayments. The notice of default stated that the deed of trust appointing First American as trustee had been executed by "The Living Trust of Gilbert and Cecilia Marosi, dated March 9, 1983, amended March 4, 1985 and June 5, 2008."[6] (Boldface & underscoring omitted.)

---

[6] This allegation (and that related to the notice of sale described below) appeared in each of the Marosis' complaints.

The Marosis also received at their personal address a notice of trustee's sale of the property (notice of sale) to occur on May 3, 2018. The notice of sale indicated that the deed of trust for the property had been executed by "The Living Trust of Gilbert and Cecilia Marosi, dated March 9, 1983, amended March 4, 1985 and June 5, 2008." The Marosis repaid the loan from TriCo in 2018.

On May 12, 2018, Ricardo signed a grant deed (later recorded) conveying the property from 23760 Alamitos Road LLC to Midpeninsula Regional Open Space District (Midpeninsula).

*B. Procedural Background*

On October 31, 2022, the Marosis filed a complaint against TriCo for breach of contract, among other claims. The Marosis alleged that TriCo, by titling the property in the Marosi Trust rather than in the Marosis as individuals and "conceal[ing]" facts related to the titling, breached the loan agreement between the parties and caused the Marosis harm.

TriCo demurred to the Marosis' original complaint and the subsequently filed first amended complaint. The trial court sustained TriCo's demurrer to the first amended complaint[7] in part on the ground that the causes of action were barred by the applicable statutes of limitation but granted the Marosis leave to amend.

On August 15, 2023, the Marosis filed a second amended complaint against TriCo asserting the following causes of action: breach of contract (first cause of action), breach of implied covenant of good faith and fair dealing (second cause of action), inducing breach of fiduciary duty (third cause of action), fraud (fourth cause of action), inducing breach of contract

---

[7] The Marosis filed their first amended complaint before the court ruled on TriCo's demurrer to the original complaint.

between the Marosis and Twin Creek (fifth cause of action), intentional interference with contractual relations between the Marosis and Fidelity (sixth cause of action), inducing financial elder abuse under Welfare and Institutions Code section 15610.30 (seventh cause of action), violation of Civil Code section 2924 (eighth cause of action), and declaratory relief to quiet title in the property (ninth cause of action). The claims in the second amended complaint rested on the Marosis' assertion that TriCo had wrongly titled the property in the name of the Marosi Trust instead of them as individuals.

The Marosis asserted that their first, fourth, fifth, sixth, and seventh causes of action were not barred by the applicable statutes of limitations. With respect to their first cause of action for breach of contract, the Marosis alleged that Gilbert "first became suspicious" in March 2019 "of the scope of [TriCo's] involvement" in the purchase of the property. On that basis, the Marosis alleged that they timely filed the breach of contract claim against TriCo (i.e., within the four-year statute of limitations). With respect to the fourth, fifth, sixth, and seventh causes of action, the Marosis alleged that their claims are not time-barred by the applicable statutes of limitations because the Marosis first discovered the grant deed had been "forged" with the addition of an incorrect second amendment date[8] when they received escrow documents from Fidelity on or about February 11, 2022.

The Marosis sought from the trial court a determination that the Marosis as individuals held title in the property, a declaration that the Marosis were entitled to cancellation of the grant deed and rescission of the notice of default and notice of sale, at least $5 million in compensatory

---

[8] The Marosis alleged that Fidelity "forged" documents by adding " 'and June 5, 2008,' " to the end of the name of the trust. The Marosis also alleged that the correct date for the second amendment to the Marosi Trust was May 19, 2009, not June 5, 2008.

7

damages, $50 million in damages "legally and/or proximately caused by" TriCo, punitive damages, the Marosis' "costs of suit," and such other or additional relief as the court deemed just and proper.

TriCo demurred to the second amended complaint, again arguing that the claims were barred by the applicable statutes of limitations. In addition, TriCo maintained that, because the Marosis had already had three opportunities to present their claims and, in all three instances, the claims as pleaded were time-barred, the trial court should deny any request by the Marosis for leave to amend.

On December 15, 2023, the trial court issued a written order sustaining TriCo's demurrer without leave to amend (demurrer order). The court found the Marosis' allegations regarding their discovery of the vesting of title in the property in the Marosi Trust to be insufficient and/or in conflict with other allegations of the complaint. The court found that the Marosis had presumptive knowledge that title in the property had vested "not as they intended" no later than December 29, 2017, triggering the running of the statutes of limitations. On that basis, the court sustained TriCo's demurrer on the ground that the Marosis' claims were time-barred.

On February 23, 2024, a different bench officer (Judge Socrates P. Manoukian) than the one who issued the demurrer order (Judge Eric S. Geffon) entered judgment. The judgment declared that TriCo was the prevailing party and entitled to attorney fees and costs. Judge Manoukian signed the judgment on behalf of Judge Geffon pursuant to section 635.[9]

---

[9] Section 635 provides that, "[i]n all cases where the decision of the court has been entered in its minutes, and when the judge who heard or tried the case is unavailable, the formal judgment or order conforming to the minutes may be signed by the presiding judge of the court or by a judge designated by the presiding judge."

On April 8, 2024, the Marosis filed a notice of appeal of the trial court's judgment (case No. H051989).

On March 6, 2024, TriCo filed its memorandum of costs and requested $7,574.34 in costs, including (as pertinent to this appeal) $2,286.80 in deposition costs and $2,432.68 for "[m]odels, enlargements, and photocopies of exhibits."

On March 28, 2024, the Marosis filed a motion to tax costs. The Marosis asserted that the deposition at issue was "[n]ot reasonably necessary to the conduct of the litigation" under section 1033.5, subdivision (c)(2) and (c)(3), and the exhibit costs should be excluded under section 1033.5, subdivisions (a)(13) and (b)(3) because the exhibits were not used at trial. The Marosis also challenged TriCo's research, copying, and postage costs.

TriCo opposed the Marosis' motion to tax costs. As relevant to the issues on appeal, TriCo argued the Marosis failed to provide evidence to support their assertion that TriCo was not entitled to recover their deposition costs, which TriCo incurred in connection with Gilbert's deposition in a related lawsuit the Marosis had filed against Midpeninsula and Fidelity.

On April 9, 2024, TriCo filed an amended motion for $379,280.25 in attorney fees pursuant to Civil Code section 1717, subdivision (a), California Rules of Court, rule 3.1702(b), and the loan agreement between TriCo and the Marosis. TriCo based its claim for attorney fees on the attorney fee provision in the loan agreement and on Civil Code section 1717 for its successful defense against the Marosis' action for breach of contract. TriCo further asserted that its attorneys' hourly rates and time expended were reasonable.

The Marosis opposed TriCo's motion for attorney fees.

On May 30, 2024, the Marosis filed a judicial challenge against both Judge Manoukian and Judge Geffon under section 170.1, asserting that the two bench officers were biased.

On June 4, 2024, at the outset of a hearing on fees, costs, and sanctions, the Marosis informed Judge Geffon that they had filed a judicial challenge against him and Judge Manoukian. Judge Geffon temporarily suspended the hearing and reviewed the filed papers before reconvening the hearing to address the Marosis' statement of disqualification.

At the reconvened hearing, Judge Geffon found that it was inappropriate for the Marosis to file a single statement of disqualification against two bench officers. Judge Geffon further stated that the statement of disqualification against him had not been properly served, but he would waive the requirement of proper service solely as it pertained to the challenge against him.

In response to the disqualification motion, Judge Geffon found that the Marosis had not demonstrated a basis for his disqualification because their assertion of bias amounted to a disagreement with his legal rulings. He stated that he was striking the challenge "at this time" and he would file that morning a written order striking the challenge. In response to the Marosis' objection that the hearing could not proceed, Judge Geffon relied on section 170.4, subdivision (d), which provides that a disqualified judge shall have no power to act in any proceeding after his or her disqualification or after the filing of a statement of a disqualification until the question of his or her disqualification has been determined. As Judge Geffon had determined the question of his disqualification orally and would be filing a written order that morning, he found section 170.4 did not bar resumption of the hearing. The minute order for the hearing indicates that Judge Geffon prepared and

10

signed an order striking the challenge (the disqualification order), which he gave to the courtroom clerk for processing.

Immediately following the striking of the judicial disqualification motion, the trial court conducted the hearing on the motions for fees, costs, and sanctions. With respect to fees, the court found that the attorney fees were authorized under the terms of the loan agreement because the attorney fee provision in the agreement included attorney fees "incurred in connection with the enforcement of the agreement." The court disagreed with the Marosis' assertion that their repayment of the loan terminated TriCo's right to attorney fees. The court found that the Marosis' causes of action all "ar[ose] out of and [were] completely intertwined with the contract itself, which is the basis of the underlying claims and really the foundation of the lawsuit itself." The court determined that apportionment was unnecessary "given the close relation between the contract and all of the other claims in th[e] case." Finding the requested attorney fees reasonable based on the submitted evidence, the court awarded TriCo $379,280.25 in attorney fees.

The trial court taxed the report and mailing costs but denied the motion as to the costs incurred for deposition and the models, enlargements, and photocopies of exhibits. The court awarded TriCo $5,645.32 in costs.

On July 1, 2024, the trial court issued a final judgment summarizing the court's demurrer order, fee order, and costs order.

On August 30, 2024, the Marosis filed a notice of appeal (case No. H052506) of the judgment entered on February 23, 2024, as "[a]n order after judgment under Code of Civil Procedure [section] 904.1[, subdivision] (a)(2)."[10]

---

[10] TriCo asserts the fee order and the costs order were both signed and served on the Marosis on June 14, 2024, thereby rendering the Marosis'

11

August 30, 2024 notice of appeal untimely.  In addition, TriCo contends that the Marosis' appeal in case No. H052506 is inadequate because it referenced the incorrect judgment date and referred to the appealed final judgment as an "order."  TriCo requests this court dismiss the appeal in case No. H052506 on those grounds.

The Marosis do not address TriCo's timeliness argument. Nevertheless, we decide the Marosis timely filed their August 30, 2024 notice of appeal.  Although TriCo served their initial notices of entry of the fee order, costs order, and final judgment on June 14, 2024, because the trial court had not yet filed those orders and final judgment, the June 14, 2024 notices of entry were not yet operative.  (See Cal. Rules of Court, rule 8.104(c).)  The court filed the fee order, costs order, and final judgment on July 1, 2024, and TriCo served updated notices of entry of the orders and final judgment on the Marosis on July 2, 2024.  Because the time to appeal began to run on July 2, 2024, the August 30, 2024 notice of appeal is timely. (See *id.*, rule 8.104(a), (c).)

As TriCo observes, the Marosis assert in their opening brief on appeal that their August 30, 2024 notice of appeal was an appeal of the trial court's July 1, 2024 final judgment (we presume the Marosis' reference to the "July 2, 2024 [f]inal [j]udgment" contains a typographical error in the date), but that notice of appeal states that the Marosis are appealing "[a]n order after judgment" and that the date of judgment is "February 23, 2024."  Despite the inconsistencies between the Marosis' notice of appeal and opening brief, it is "the long-standing ' "law of this state that notices of appeal are to be liberally construed so as to protect the right of appeal if it is reasonably clear what [the] appellant was trying to appeal from, and where the respondent could not possibly have been misled or prejudiced." ' " (*K.J. v. Los Angeles Unified School Dist.* (2020) 8 Cal.5th 875, 882; Cal. Rules of Court, rule 8.100(a)(2).) This liberal construction requirement compels us to consider "whether the notice, despite any technical defect, nonetheless served its basic function—to provide notice of who is seeking review of what order or judgment—so as to properly invoke appellate jurisdiction." (*K.J.*, at p. 883.)  Given that the fee order and the cost order were both entered after the February 23, 2024 judgment, we may liberally construe the August 30, 2024 notice of appeal to have been taken from those orders.  (See § 904.1, subd. (a)(2).)  In the alternative, the August 30, 2024 notice of appeal " 'may without prejudice to respondent reasonably be interpreted to apply to [the] appealable order or judgment rendered before the appeal was noticed.' " (*K.J.*, at p. 884.) Moreover, because the parties have fully briefed the issues on appeal and we discern no misapprehension by or prejudice to TriCo as to notice, we exercise

On April 9, 2024, TriCo filed an amended notice and amended motion for sanctions against the Marosis and their counsel, William C. Milks, III. TriCo requested monetary sanctions in the amount of $379,280.25, corresponding to its attorney fees in the matter.

TriCo asserted that the Marosis' allegations were "knowingly false." TriCo relied in part on two September 12, 2013 e-mails from Gilbert to Arlie Ferguson (a TriCo loan officer) in which Gilbert requested that TriCo title the property in the name of the Marosi Trust.[11]

In opposition, the Marosis and Milks challenged TriCo's sanctions motion as untimely, unauthorized by the trial court, and not diligently sought under section 128.5, subdivision (f)(1). They also disputed the factual bases for TriCo's motion, asserting that Gilbert had no record of the September 12, 2013 e-mails he had sent requesting the property be titled in the Marosi trust, and the e-mails violated the Probate Code because they had not been signed by Gilbert, were incomplete, and were only from Gilbert, not Cecilia.

At the hearing on TriCo's motion for sanctions, the trial court stated that "sanctions motions under [section]128.5 do require a very high burden to be met in order to find a matter to be frivolous or filed for the purposes of harassment." Without detailing the basis for its finding, the court

---

our discretion to consider the Marosis' appeal in case No. H052506 on its merits.

[11] In connection with its demurrer to the Marosis' second amended complaint, TriCo requested the trial court take judicial notice of the September 12, 2013 e-mails from Gilbert to Ferguson. The court denied TriCo's request.

In support of TriCo's motion for sanctions, Ferguson filed a declaration in which he recounted his communications with Gilbert on September 12, 2013, and attached copies of the September 12, 2013 e-mails.

determined that TriCo had not met the standard and orally denied TriCo's motion.

On July 1, 2024, the trial court filed its written order denying TriCo's motion for sanctions against the Marosis and Milks. In the written order concluding the sanctions motion should be denied, the court stated it had considered the pleadings and papers filed in support of and in opposition to TriCo's motion as well as the arguments made during the hearing. The court did not further explain its reasoning.

On July 30, 2024, TriCo appealed the trial court's order denying TriCo's motion for sanctions (case No. H052427).

This court ordered the Marosis' appeal from the judgment and the fee order and TriCo's appeal from the sanctions order considered together for purposes of record preparation, briefing, oral argument, and disposition.

## II. DISCUSSION

### A. General Principles of Appellate Review

"[I]t is a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609, citing *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)

"To demonstrate error, appellant must present meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error." (*In re S.C.* (2006) 138 Cal.App.4th 396, 408 (*S.C.*).) When an appellant asserts a point on appeal " 'but fails to support it with reasoned argument and citations to authority' " (*Nelson v. Avondale Homeowners Assn.* (2009) 172 Cal.App.4th 857, 862) or fails to

14

support it with appropriate record citations (*In re Marriage of Fink* (1979) 25 Cal.3d 877, 887; Cal. Rules of Court, rule 8.204(a)(1)(C)), this court may treat the point as forfeited. We are not required to search the record for error ourselves (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246), and "[w]e are not bound to develop appellants' arguments for them." (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830 (*Falcone & Fyke*).)

### B. Demurrer

The Marosis assert the trial court erred in sustaining the demurrer because the court's "findings of fact" were not supported by the record, ascertaining their intention when signing the various agreements pertaining to the purchase of the property required consideration of parol evidence, and the Marosi Trust did not have the power to borrow or mortgage.

In addition, the Marosis contend the trial court abused its discretion in denying them leave to file a third amended complaint because the trial court had not conducted a hearing on the Marosis' prior complaints, and the Marosis " 'could plead around each of the various defects,' " "many of which were raised for the first time."

The Marosis also assert that the judgment is invalid under section 635 because the bench officer who issued the order (Judge Geffon) was available, the bench officer who signed the judgment (Judge Manoukian) was not the bench officer who issued the order, and Judge Manoukian was not the presiding judge of the trial court.[12] They further assert that the judgment is

---

[12] In their reply brief, the Marosis argue for the first time on appeal that the judgment was also invalid because the award of attorney fees and costs in the judgment was "open-ended," and the trial court did not overrule the Marosis' objection to the hearing on the motion for attorney fees. These arguments are untimely, and we do not consider them further. (*Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52 (*Allen*).)

15

invalid because the demurrer order did not award attorney fees but the judgment did.

      1. <u>Legal Principles</u>

      "Because the function of a demurrer is to test the sufficiency of a pleading as a matter of law, we apply the de novo standard of review in an appeal following the sustaining of a demurrer without leave to amend." (*California Logistics, Inc. v. State of California* (2008) 161 Cal.App.4th 242, 247 (*California Logistics*).) When reviewing a trial court's order sustaining a demurrer, we assume the truth of the allegations in the operative complaint, but we do not assume the truth of contentions, deductions, or conclusions of fact or law. (*Nguyen v. Ford* (2020) 49 Cal.App.5th 1, 11 (*Nguyen*); *California Logistics*, at p. 247.)

      " 'A demurrer based on a statute of limitations will not lie where the action may be, but is not necessarily, barred. [Citation.] In order for the bar of the statute of limitations to be raised by demurrer, the defect must clearly and affirmatively appear on the face of the complaint; it is not enough that the complaint shows that the action may be barred.' " (*Geneva Towers Ltd. Partnership v. City of San Francisco* (2003) 29 Cal.4th 769, 781 (*Geneva Towers*); see also *Guardian North Bay, Inc. v. Superior Court* (2001) 94 Cal.App.4th 963, 971–972.)

      "Generally speaking, a cause of action accrues at 'the time when the cause of action is complete with all of its elements.' " (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 806.) The discovery rule provides an exception by postponing the accrual of a cause of action until the plaintiff either discovers or has reason to discover the cause of action, which occurs when the plaintiff has reason to suspect a factual basis for a cause of action.

16

(*Id.* at p. 807; *Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 397–398 (*Norgart*).)

A plaintiff has reason to suspect a factual basis for a cause of action when he or she "has ' " ' "notice or information of circumstances to put a reasonable person *on inquiry*." ' " ' " (*Norgart*, *supra*, 21 Cal.4th at p. 398; *Kline v. Turner* (2001) 87 Cal.App.4th 1369, 1374 (*Kline*).) "For purposes of accrual of the limitations period, inquiry notice is triggered by suspicion." (*E-Fab, Inc. v. Accountants, Inc. Services* (2007) 153 Cal.App.4th 1308, 1319 (*E-Fab*).) The plaintiff need not know the specific facts necessary to establish the elements of the cause of action, but must, within the applicable limitations period, "seek to learn the facts necessary to bring the cause of action in the first place." (*Norgart*, at p. 398; *Kline*, at p. 1374.)

"[I]t is an abuse of discretion for the court to sustain a demurrer without leave to amend if the plaintiff has shown there is a reasonable possibility a defect can be cured by amendment." (*California Logistics*, *supra*, 161 Cal.App.4th at p. 247.) "We review a trial court's denial of leave to amend under an abuse of discretion standard. [Citation.] 'Where a demurrer is sustained without leave to amend, [we] must determine whether there is a reasonable probability that the complaint could have been amended to cure the defect; if so, [we] will conclude that the trial court abused its discretion by denying the plaintiff leave to amend. [Citation.] The plaintiff bears the burden of establishing that it could have amended the complaint to cure the defect.' " (*Nguyen*, *supra*, 49 Cal.App.5th at p. 18.)

2. <u>Analysis</u>

The statute of limitations is four years for a claim of breach of a written contract (§ 337, subd. (a); *Giklyson v. Disney Enterprises, Inc.* (2016) 244 Cal.App.4th 1336, 1341), two years for a claim of breach of the implied

covenant of good faith and fair dealing (*Bennett v. Ohio National Life Assurance Corp.* (2023) 92 Cal.App.5th 723, 728), three years for an action for relief on the grounds of fraud (§ 338, subd. (d); *Kline, supra,* 87 Cal.App.4th at pp. 1373–1374), two years for a claim of inducing breach of contract (*Barton v. New United Motor Manufacturing, Inc.* (1996) 43 Cal.App.4th 1200, 1206), two years for a cause of action for intentional interference with contractual relations (§ 339, subd. (1)), and three years for a cause of action for violation of Civil Code section 2924 (§ 338, subd. (a)). Where no specific statute of limitations period applies, we apply the catchall four-year limitation period set forth in section 343.[13] (*Geneva Towers, supra,* 29 Cal.4th at p. 773.)

" 'Resolution of the statute of limitations issue is normally a question of fact.' [Citation.] More specifically, as to accrual, 'once properly pleaded, belated discovery is a question of fact.' [Citation.] As our state's high court has observed: 'There are no hard and fast rules for determining what facts or circumstances will compel inquiry by the injured party and render him [or her] chargeable with knowledge. [Citation.] It is a question for the trier of fact.' [Citation.] 'However, whenever reasonable minds can draw only one conclusion from the evidence, the question becomes one of law.' [Citation.] Thus, when an appeal is taken from a judgment of dismissal following the

---

[13] In their reply brief, the Marosis contend for the first time on appeal that the statute of limitations is five years for a quiet title action (their ninth cause of action seeking declaratory relief). This argument is untimely, and we are not required to consider it further. (*Allen, supra,* 234 Cal.App.4th at p. 52.) Even assuming arguendo the Marosis had raised this contention in a timely manner, the sole decision they rely on does not support it. (*Salazar v. Thomas* (2015) 236 Cal.App.4th 467, 477 [stating that the statute of limitations for a quiet title claim based on fraud and mistake is three years]; see also § 338, subd. (d).)

sustention of a demurrer, 'the issue is whether the trial court could determine as a matter of law that failure to discover was due to failure to investigate or to act without diligence.' " (*E-Fab*, *supra*, 153 Cal.App.4th at p. 1320.)

The Marosis alleged in their second amended complaint that "[v]arious of the documents presented to the Marosis on October 22, 2013[,] requested signatures by the Marosis as individuals and others as individuals and/or as trustees of a trust that never existed and/or to a '[d]eed of [t]rust' to" TriCo "relating to a purported mortgage on the [p]roperty for the loan to the Marosis to purchase the [p]roperty." They further alleged that, while reviewing and signing the documents presented, "the Marosis noted that some of the documents purported to relate [to] a trust." In addition, the Marosis alleged that, on or about December 29, 2017, First American mailed to the Marosis' personal residence the notice of default, which stated that the deed of trust had been executed by the Marosi Trust (with the allegedly erroneous June 5, 2008 second amendment date).

We decide that " 'reasonable minds can draw only one conclusion from the evidence' " (*E-Fab*, *supra*, 153 Cal.App.4th at p. 1320), that the documents signed by the Marosis on October 22, 2013, reasonably should have put them on inquiry notice of a lack of clarity regarding the titling of the property and should have prompted further investigation. Furthermore, the December 29, 2017 notice of default sent to the Marosis' home address affirmatively stated that the property was titled in the name of the Marosi Trust. We therefore conclude that the accrual date for the statutes of limitation for the Marosis' causes of action was, at the latest, December 29, 2017. The Marosis' allegations do not demonstrate that their failure to discover the titling of the property in the Marosi Trust as of December 29, 2017, " 'was reasonable, justifiable and not a result of [their] failure to

19

investigate or to act.' " (*Christ v. Lipsitz* (1979) 99 Cal.App.3d 894, 898.)  As the Marosis did not file their initial complaint until October 31, 2022, all of their causes of action are time-barred under the applicable statutes of limitation.

The Marosis contend that the notice of default did not place them on inquiry notice because, by that time, Ricardo had become trustee of the Marosi Trust and was responsible for responding to the notice and other matters pertaining to the trust.

The Marosis do not make any cogent arguments or cite any legal authority to support their contentions that receipt of the notice of default at their personal residence did not put them on inquiry notice.  Their other contentions of error are conclusory and similarly unsupported.  The Marosis have thereby forfeited these contentions as a basis for reversal of the judgment.[14]  (*S.C.*, *supra*, 138 Cal.App.4th at p. 408; *Falcone & Fyke*, *supra*, 164 Cal.App.4th at p. 830.)

In the alternative, the Marosis maintain that the judgment is invalid under section 635 because Judge Geffon was available to sign the judgment, and Judge Manoukian was neither the bench officer who issued the underlying order nor the presiding judge.  In support of their argument regarding Judge Geffon's availability, they cite to their counsel's declaration

---

[14] We are not persuaded by the Marosis' other arguments on appeal. The allegedly unsupported "findings of fact," the Marosis' intention when signing the documents on October 22, 2013, and the Marosi Trust's ability to borrow or mortgage do not surmount the Marosis' allegation that on December 29, 2017, they were provided with notice of default of the loan on the property held by the Marosi Trust.  Moreover, the portion of the order quoted by the Marosis is a summary of the Marosis' assertions, rather than findings of fact by the trial court.

attesting that "Judge Manoukian stated that he had considered having Judge Geffon sign the [j]udgment."

The Marosis do not develop any coherent argument or provide any legal authority supporting their contention that Judge Manoukian's alleged statement demonstrated that Judge Geffon was available at the time Judge Manoukian signed the judgment. We therefore disregard their argument. Moreover, section 635 authorizes either the presiding judge of the court *or* a judge designated by the presiding judge to sign a formal judgment when the judge who heard the matter is unavailable. Although Judge Manoukian is not the presiding judge of the trial court, the Marosis offer neither argument nor evidence in the record to suggest that Judge Manoukian was not designated by the presiding judge to sign the judgment on Judge Geffon's behalf while the latter was unavailable. The Marosis have failed to demonstrate any violation of section 635.

The Marosis also argue that the judgment is invalid because Judge Geffon did not award attorney fees and costs in the order. Here, too, the Marosis cite no legal authority nor engage in any reasoned argument on this point. This argument is similarly forfeited on appeal.

We perceive no abuse of discretion in the trial court's decision to deny the Marosis the opportunity to further amend their complaint. As the plaintiffs, the Marosis bear the burden of establishing that there is a reasonable probability that they could have amended the complaint to cure the defect. (*Nguyen*, *supra*, 49 Cal.App.5th at p. 18.) They have not done so.

Because the Marosis have not carried their burden on appeal of showing prejudicial error, we affirm the judgment.

21

*C. Disqualification*

The Marosis contend the trial court erred in conducting the hearing on TriCo's motion for attorney fees and costs because their judicial challenge against Judge Geffon and Judge Manoukian was pending during the hearing, and Judge Geffon did not file the order striking the challenge until after the hearing concluded.

"[I]f a statement of disqualification is untimely filed or if on its face it discloses no legal grounds for disqualification, the trial judge against whom it was filed may order it stricken." (§ 170.4, subd. (b); *Dumas v. Los Angeles County Bd. of Supervisors* (2020) 45 Cal.App.5th 348, 353 (*Dumas*).)

The Marosis do not cite any legal authority in support of their argument that Judge Geffon was required to file a written order striking their statement of disqualification prior to conducting the hearing on the parties' motions on attorney fees, costs, and sanctions.

Moreover, our review of the applicable statutory and case authority does not reveal any such requirement. Section 170.4, subdivision (d) provides that "a disqualified judge shall have no power to act in any proceeding after his or her disqualification or after the filing of a statement of disqualification until the question of his or her disqualification has been determined." (See also *Dumas*, *supra*, 45 Cal.App.5th at p. 353.) The statute does not require that the determination be made in writing. Judge Geffon orally struck the Marosis' challenge during the hearing before proceeding with the hearing on the attorney fees, costs, and sanctions motions.

The Marosis have not established error in the trial court's treatment of the Marosis' statement of disqualification.

### D. *Attorney Fees and Costs*

#### 1. Attorney Fees

The Marosis assert that the trial court erred in awarding attorney fees to TriCo because the fee provision in the loan agreement terminated upon the Marosis' repayment of the loan, the Marosis did not request attorney fees in their second amended complaint, Civil Code section 1717 does not apply, the attorney fees provision in the loan agreement was limited to actions pursued to enforce repayment of the loan and did not refer to a " 'prevailing party,' " and the awarded fees amount was "overbroad."

Under the "American rule," each party to a lawsuit ordinarily pays its own attorney fees. (*Mountain Air Enterprises, LLC v. Sundowner Towers, LLC* (2017) 3 Cal.5th 744, 751 (*Mountain Air*).) However, section 1021 "permits parties to ' "contract out" of the American rule' by executing an agreement that allocates attorney fees. [Citations.] Thus, ' "[p]arties may validly agree that the prevailing party will be awarded attorney fees incurred in any litigation between themselves, whether such litigation sounds in tort or in contract." ' " (*Mountain Air*, at p. 751.)

"In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs." (Civ. Code, § 1717, subd. (a); see also *Santisas v. Goodin* (1998) 17 Cal.4th 599, 614 (*Santisas*).) "Reasonable attorney's fees shall be fixed by the court, and shall be an element of the costs of suit." (Civ. Code, § 1717, subd. (a); *Chen v. Valstock Ventures, LLC* (2022) 81 Cal.App.5th 957, 970 (*Chen*).)

23

Parties to a contract may agree that the prevailing party may recover attorney fees for both contract claims and noncontract claims. (*Santisas*, *supra*, 17 Cal.4th at p. 608.) However, Civil Code section 1717 is limited to attorney fees on a contract claim. (*Exxess Electronixx v. Heger Realty Corp.* (1998) 64 Cal.App.4th 698, 708; *Orozco v. WPV San Jose, LLC* (2019) 36 Cal.App.5th 375, 408 (*Orozco*).) Thus, even "[i]f an action asserts both contract and tort or other noncontract claims, [Civil Code] section 1717 applies only to attorney fees incurred to litigate the contract claims." (*Santisas*, at p. 615.)

"In determining whether an action is 'on the contract' under [Civil Code] section 1717, the proper focus is not on the nature of the remedy, but on the basis of the cause of action." (*Kachlon v. Markowitz* (2008) 168 Cal.App.4th 316, 347 (*Kachlon*).) Our courts have distilled "the following principle: An action (or cause of action) is 'on a contract' for purposes of [Civil Code] section 1717 if (1) the action (or cause of action) 'involves' an agreement, in the sense that the action (or cause of action) arises out of, is based upon, or relates to an agreement by seeking to define or interpret its terms or to determine or enforce a party's rights or duties under the agreement; and (2) the agreement contains an attorney fees clause." (*Douglas E. Barnhart, Inc. v. CMC Fabricators, Inc.* (2012) 211 Cal.App.4th 230, 242 (*Douglas*); *Orozco*, *supra*, 36 Cal.App.5th at p. 408.)

"Although normally we review attorney fee awards for abuse of discretion, where, as here, the appeal presents a legal question of whether the criteria for an attorney fee award have been satisfied, our review is de novo." (*American Building Innovation LP v. Balfour Beatty Construction, LLC* (2024) 104 Cal.App.5th 954, 966, citing *Mountain Air*, *supra*, 3 Cal.5th at p. 751.)

24

" 'Before [Civil Code] section 1717 comes into play, it is necessary to determine whether the parties entered an agreement for the payment of attorney fees, and if so, the scope of the attorney fee agreement.' [Citation.] This determination requires us to apply traditional rules of contract interpretation." (*Mountain Air*, *supra*, 3 Cal.5th at p. 752.)

We start by considering the parties' intention at the time they signed the agreement (Civ. Code, § 1636) by reviewing the plain language of the agreement (*id.*, § 1639). " ' "The 'clear and explicit' meaning of these provisions, interpreted in their 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage' [citation], controls judicial interpretation." ' " (*Mountain Air*, *supra*, 3 Cal.5th at p. 752.)

Although "attorney fee provisions, if drafted broadly, can encompass noncontractual claims" (*Orien v. Lutz* (2017) 16 Cal.App.5th 957, 964 (*Orien*)), such as "when they apply to actions 'arising out of' or ' "relating to" ' a contract or its subject matter, or to ' "any dispute under" ' an agreement" (*id.* at pp. 964–965), a broad attorney fee provision that encompasses tort or other noncontract claims does not extend the application of Civil Code section 1717 to cover noncontract claims. (*Orozco*, *supra*, 36 Cal.App.5th at p. 408.)

The loan agreement contained the following attorney fee provision: "Borrower agrees to pay upon demand all of [l]ender's costs and expenses, including [l]ender's attorneys' fees and [l]ender's legal expenses, incurred in connection with the enforcement of this [a]greement. Lender may hire or pay someone else to help enforce this [a]greement, and [b]orrower shall pay the costs and expenses of such enforcement. Costs and expenses include [l]ender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings

25

(including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Borrower also shall pay all court costs and such additional fees as may be directed by the court."

By its terms, the loan agreement's purpose was to set forth the terms and conditions of a loan from TriCo to the Marosis (including representations and warranties by the Marosis), and the attorney fee provision authorized attorney fees and costs incurred by TriCo in connection with enforcing those terms and conditions. Because the Marosis' suit was not an effort by TriCo to enforce the terms of the loan agreement, we conclude the loan agreement's attorney fee provision does not, without more, provide a basis for TriCo's request for attorney fees. (*Orien*, *supra*, 16 Cal.App.5th at p. 965.)

In the alternative, TriCo asserts it is entitled to attorney fees under Civil Code section 1717. "[A] party who obtains an unqualified victory on a contract dispute, including a defendant who defeats recovery by the plaintiff on the plaintiff's entire contract claim, is entitled as a matter of law to be considered the prevailing party for purposes of [Civil Code] section 1717." (*DisputeSuite.com, LLC v. Scoreinc.com* (2017) 2 Cal.5th 968, 973; *Scott Co. of California v. Blount, Inc.* (1999) 20 Cal.4th 1103, 1109 (*Scott*).)

The Marosis alleged in their first cause of action that TriCo had breached the loan agreement by vesting, or causing to vest, title in the property in the Marosi Trust rather than in the Marosis as individuals. The Marosis' remaining causes of action are all based on the same allegation, that, by its actions, TriCo vested or caused to vest title in the property in the Marosi Trust rather than in the Marosis as individuals, in alleged contravention of the Marosis' rights under the loan agreement. As discussed *ante*, the loan agreement contains an attorney fee provision. We decide that

26

all the causes of action in the Marosis' second amended complaint satisfy the test for an action on a contract under Civil Code section 1717. (*Douglas*, *supra*, 211 Cal.App.4th at p. 242; *Orozco*, *supra*, 36 Cal.App.5th at p. 408.)

The Marosis contend that, because the attorney fee provision in the loan agreement does not specifically refer to the " 'prevailing party' " and only benefits TriCo, TriCo is not entitled to attorney fees under Civil Code section 1717. The Marosis misconstrue Civil Code section 1717.

The statute provides that, "[i]n any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded *either* to one of the parties *or* to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs." (Civ. Code, § 1717, subd. (a); see also *Santisas*, *supra*, 17 Cal.4th at p. 614.) It is well-established that the prevailing party in an action may recover attorney fees under Civil Code section 1717 even if the applicable attorney fee provision is unilateral in nature. (See *Scott, supra,* 20 Cal.4th at p. 1109; *Santisas*, at pp. 610–611; *Hsu v. Abbara* (1995) 9 Cal.4th 863, 870 (*Hsu*).)

Although the Marosis assert that they did not request attorney fees in their second amended complaint, their prayer for relief requested "costs of suit." (See Civ. Code, § 1717, subd. (a) ["Reasonable attorney's fees . . . [are] an element of the costs of suit."]; *Chen*, *supra*, 81 Cal.App.5th at p. 970.) Moreover, entitlement to attorney fees under Civil Code section 1717 depends not on the relief sought, but on the basis for the claim. (*Kachlon, supra*, 168 Cal.App.4th at p. 347.)

27

Because TriCo prevailed on all the causes of action on demurrer, it is entitled to attorney fees on those claims under Civil Code section 1717. (*Santisas*, *supra*, 17 Cal.4th at p. 611; *Hsu*, *supra*, 9 Cal.4th at p. 870.)

We are not persuaded by the Marosis' other contentions on appeal.

The Marosis assert that the trial court abused its discretion in finding reasonable the amount of attorney fees requested by TriCo. (*PLCM Group v. Drexler* (2000) 22 Cal.4th 1084, 1095.) The sole support for the Marosis' argument appears to be a keyword search done by the Marosis' counsel of TriCo's attorneys' bills. They maintain that this keyword search demonstrates that only a small portion of the requested fees pertained to the breach of contract cause of action. The Marosis' argument about the relevance of a keyword search, which is unsupported by any pertinent legal authority, does not demonstrate that the court abused its discretion in setting the amount of attorney fees.[15]

The Marosis have failed to show that the trial court committed an error of law in determining TriCo is entitled to attorney fees, or that the court abused its discretion in determining the amount of TriCo's attorney fees. We therefore affirm the trial court's fee order.

2. Costs

The Marosis assert the trial court erred in failing to tax the costs incurred for the deposition of Gilbert because they were "[n]ot reasonably necessary to the conduct of the litigation and/or not reasonable in amount" under section 1033.5, subdivision (c)(2) and (c)(3). They further maintain that the court erred in failing to tax the costs incurred for models,

---

[15] The Marosis also argue that the trial court's fee order is invalid because it is based on the invalid judgment. Because we have decided that the judgment is not invalid (see pt. II.B.2., *ante*), we do not reach this argument.

enlargements, and photocopies of exhibits because there was no trial. (Citing § 1033.5, subds. (a)(13), (b)(3).)

"Except as otherwise expressly provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding." (§ 1032, subd. (b); *Williams v. Chino Valley Independent Fire Dist.* (2015) 61 Cal.4th 97, 100.)

"Section 1033.5 imposes limits on the recoverable costs a prevailing party may seek, listing items that are allowable and not allowable as costs under the statute." (*Rozanova v. Uribe* (2021) 68 Cal.App.5th 392, 399 (*Rozanova*).) As pertinent here, the statute designates the following deposition related items as allowable costs: "Taking, video recording, and transcribing necessary depositions, including an original and one copy of those taken by the claimant and one copy of depositions taken by the party against whom costs are allowed" (§ 1033.5, subd. (a)(3)(A); *Garcia v. Tempur-Pedic North America, LLC* (2024) 98 Cal.App.5th 819, 825 (*Garcia*)), and "[t]ravel expenses to attend depositions." (§ 1033.5, subd. (a)(3)(C).) In addition, "[m]odels, the enlargements of exhibits and photocopies of exhibits, and the electronic presentation of exhibits, including costs of rental equipment and electronic formatting, may be allowed if they were reasonably helpful to aid the trier of fact." (*Id.*, subd. (a)(13).)

"A costs award is generally reviewed on appeal for abuse of discretion. Citation.] 'Whether a cost item was reasonably necessary to the litigation presents a question of fact for the trial court and its decision is reviewed for abuse of discretion. [Citation.] However, because the right to costs is governed strictly by statute [citation] a court has no discretion to award costs not statutorily authorized.' [Citation.] '[W]hen the issue to be determined is whether the criteria for an award of costs have been satisfied, and that issue

29

requires statutory construction, it presents a question of law requiring de novo review.' " (*Rozanova, supra,* 68 Cal.App.5th at p. 399.)

The Marosis assert the trial court abused its discretion by awarding costs to TriCo for Gilbert's deposition. The Marosis contend that Gilbert's deposition was "not reasonably necessary to the conduct of the litigation" but, rather, " 'merely convenient or beneficial,' " and that TriCo "did not notice, take, attend, reference, or use for any purpose whatsoever" Gilbert's deposition.

If the costs listed in a memorandum of costs " 'appear to be proper charges, the verified memorandum is prima facie evidence that the costs, expenses and services therein listed were necessarily incurred by the defendant [citations], and the burden of showing that an item is not properly chargeable or is unreasonable is upon the [objecting party].' " (*Nelson v. Anderson* (1999) 72 Cal.App.4th 111, 131 (*Nelson*).) Thus, a court must first determine "whether the statute expressly allows the particular item, and whether it appears proper on its face. [Citation.] If so, the burden is on the objecting party to show them to be unnecessary or unreasonable." (*Ibid.*)

The statute expressly enumerates as allowable costs the taking, videotaping, and transcribing of necessary depositions. (§ 1033.5, subd. (a)(3); *Nelson, supra,* 72 Cal.App.4th at p. 131.) "The nature of the case determines the necessity of discovery." (*Garcia, supra,* 98 Cal.App.5th at p. 824.)

The Marosis have presented no evidence from the record before us that Gilbert's deposition was not necessary to the underlying action or was unreasonable. The record contains an unsupported assertion in the Marosis' motion to tax costs that such deposition costs were "[n]ot reasonably necessary to the conduct of the litigation and/or not reasonable in amount"

30

under the statute.[16]  Although the requested costs for Gilbert's deposition were incurred in connection with the Marosis' lawsuit against Midpeninsula and Fidelity, TriCo asserted that the deposition was "relevant [] and reasonably necessary" because the lawsuit against Midpeninsula and Fidelity involved "similar allegations" as the underlying matter.

The Marosis have not persuaded us that it was unreasonable for TriCo to treat Gilbert as a necessary witness and unreasonable to consider his testimony on similar allegations to be relevant and reasonably necessary to the determination of the underlying matter.  We decide the trial court did not abuse its discretion in denying the Marosis' motion to tax costs incurred for Gilbert's deposition.

The Marosis also challenge the award of costs to TriCo for models, enlargements, and photocopies of exhibits on the grounds that the purported exhibits were not used at trial and the documents in question were not "exhibits."  TriCo responds that it incurred the costs in response to "the Marosis' discovery requests [that] expressly requested documents in TIFF format."[17]

---

[16] Although the Marosis' motion to tax costs references an "accompanying Memorandum of Points and Authorities," no such document appears in the record on appeal.

On appeal, the Marosis maintain that TriCo "did not notice, take, attend, reference, or use for any purpose whatsoever" Gilbert's deposition, but they do not cite any supporting evidence in the record.

[17] TriCo neither identified in its opposition to the Marosis' motion to tax costs nor on appeal what documents the requested costs covered, so it is not clear whether the documents were used at all in the demurrer proceedings. (See *Segal v. ASICS America Corp.* (2022) 12 Cal.5th 651, 663 (*Segal*) ["[C]osts for models, enlargements, and photocopies of exhibits are allowable under section 1033.5[, subdivision] (a)(13) only if they were put before the trier of fact."]; *id.* at p. 663, fn. 3 ["[P]hotocopies of exhibits and demonstratives not used at all are not allowable as costs under section

31

Photocopying charges are generally not allowable as costs under section 1033.5, subdivision (b)(3). Section 1033.5, subdivision (a)(13) provides an exception for photocopies of exhibits "if they were reasonably helpful to aid the trier of fact."

"While an 'exhibit' is ordinarily understood to refer to a document or object introduced as evidence in court, it also generally refers . . . to 'a document attached to and made part of a pleading, motion, contract, or other instrument.' " (*Rozanova, supra*, 68 Cal.App.5th at p. 403.) There are "certain distinct occasions—apart from trial—where the court functions as the trier of fact by hearing evidence and resolving factual questions." (*Ibid.*) However, certain pretrial motions, such as demurrers, which may be decided on the pleadings, "do not permit the trial court to weigh the evidence or inferences as would a trier of fact." (*Ibid.*; see also *Segal, supra*, 12 Cal.5th at p. 665 ["[A] prevailing party is not entitled to recover costs associated with preparing photocopies of exhibits and demonstratives under section 1033.5[, subdivision] (a)(13) if the items were not presented to the *trier of fact.*"]; *Mink v. Maccabee* (2004) 121 Cal.App.4th 835, 839 ["[A] demurrer does not permit the trial court to make any factual findings at all, including 'implicit' ones."].)

We decide section 1033.5, subdivision (a)(13) is not applicable on these facts. Here, the trial court on demurrer did not act as a trier of fact. " 'Where costs are not expressly allowed by the statute, the burden is on the party claiming the costs to show that the charges were reasonable and necessary.' " (*Rozanova, supra*, 68 Cal.App.5th at p. 399.) Based on the plain language of the statute, we conclude the $2,432.68 in requested costs for models, enlargements, and photocopies of exhibits are not statutorily authorized.

_____

1033.5[, subdivision] (a)(13)."].) Moreover, as discussed in greater detail *post*, the trial court does not serve as a trier of fact in a demurrer proceeding.

(§ 1033.5, subd. (a)(13); see also *Rozanova*, at p. 403.) Further, we decide TriCo has not carried its burden of showing that these charges were reasonable or necessary to decide the demurrer. We therefore reverse the trial court's costs order as to the $2,432.68 TriCo sought in costs for models, enlargements, and photocopies of exhibits and order the trial court to reduce the costs award by this amount.

### E. Motion for Sanctions

In its appeal, TriCo contends the trial court erred in denying its motion for sanctions because the Marosis' lawsuit was frivolous. In particular, TriCo relies on e-mails it proffered (of which the trial court declined to take judicial notice) that it contends demonstrate the property was titled in the Marosi Trust in 2013 at the request of Gilbert Marosi, who also provided the information about the Marosi Trust to TriCo, including the name of the trust.

TriCo also relies on allegations in actions filed by Cecilia and one of the Marosis' sons against Milks and Gilbert in which Cecilia alleges, inter alia, that, by the fall of 2022, Milks was aware of Gilbert's e-mail instructing TriCo to title the property in the Marosi Trust, but nevertheless told Gilbert they would continue to pursue the litigation against TriCo; Gilbert forged her signature on Milks's engagement letter; Gilbert did not have her permission to file the lawsuit against TriCo; and Gilbert has been declared a vexatious litigant by the court system.

TriCo acknowledges that the trial court did not have before it this information when it decided the sanctions motion, and the subject actions were all filed after the court issued its order denying sanctions. Nevertheless, TriCo requests that this court take judicial notice of the actions.

33

Appellate courts "generally do not take judicial notice of evidence not presented to the trial court.  Rather, normally 'when reviewing the correctness of a trial court's judgment, an appellate court will consider only matters which were part of the record at the time the judgment was entered.' " (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3; *USLIFE Savings & Loan Assn. v. National Surety Corp.* (1981) 115 Cal.App.3d 336, 343 ["Facts, events, documents or other matters urged by a party which are not admitted into evidence cannot be included in the record on appeal.  They are outside the scope of review."].)  Based on these longstanding principles, we decline to consider any evidence not before the trial court when it issued the appealed from sanctions order.

      1. <u>Legal Principles</u>

"A trial court may order a party, the party's attorney, or both, to pay the reasonable expenses, including attorney's fees, incurred by another party as a result of actions or tactics, made in bad faith, that are frivolous or solely intended to cause unnecessary delay." (§ 128.5, subd. (a).)  The statute defines " '[f]rivolous' " as "totally and completely without merit or for the sole purpose of harassing an opposing party." (*Id.*, subd. (b)(2).)  "Whether an action is frivolous is governed by an objective standard:  any reasonable attorney would agree it is totally and completely without merit." (*Levy v. Blum* (2001) 92 Cal.App.4th 625, 635 (*Levy*).)

However, "to impose sanctions under section 128.5, there must be a showing the action or tactic was meritless or frivolous *and* that it was pursued in bad faith, and whether the action is taken in bad faith must be judged by a subjective standard." (*Shelton v. Rancho Mortgage & Investment Corp.* (2002) 94 Cal.App.4th 1337, 1346 (*Shelton*); *Levy, supra,* 92 Cal.App.4th at p. 635 ["There must also be a showing of an improper purpose,

34

i.e., subjective bad faith on the part of the attorney or party to be sanctioned."].)

"[A] showing that a party's action or tactic is totally and completely without merit does not settle the issue of whether that action or tactic was in bad faith. Such a showing is certainly evidence that the action is brought in bad faith [citation], because a trial court is entitled to infer from the utter lack of merit that the party knew that it lacked such merit, and yet continued to pursue the action for some ulterior motive. However, the trial court may not be willing to draw that inference if it is convinced that, despite the complete lack of merit, the party was acting in the good faith (albeit erroneous and even unreasonable) belief that the action was meritorious. Thus, the inference of bad faith is one which the trial court may make, but it is not mandatory that it do so." (*Summers v. City of Cathedral City* (1990) 225 Cal.App.3d 1047, 1073 (*Summers*); *Shelton*, *supra*, 94 Cal.App.4th at p. 1346.)

We presume a trial court's order denying a motion for sanctions under section 128.5 is correct and review it on appeal for abuse of discretion. (*Shelton*, *supra*, 94 Cal.App.4th at p. 1345.) " ' " 'Where the issue on appeal is whether the trial court has abused its discretion, the showing necessary to reverse the trial court is insufficient if it presents facts which merely afford an opportunity for a different opinion: "An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge. To be entitled to relief on appeal from the result of an alleged abuse of discretion it must clearly appear that the injury resulting from such a wrong is sufficiently grave to amount to a manifest miscarriage of justice." ' " ' " (*Id*. at pp. 1345–1346, italics omitted.)

2. <u>Analysis</u>

Based largely on the applicable standard of review, we decide the trial court did not abuse its discretion in denying TriCo's motion for sanctions. But our decision is a close one. We agree that the record strongly suggests the Marosis' suit against TriCo had little—if any—merit. We have decided the record conclusively establishes that the Marosis were placed on inquiry notice that title in the property had vested in the Marosi Trust by December 29, 2017, at the latest. Nonetheless, the Marosis, who were represented by counsel (Milks), proceeded to file their complaint in October 2022, alleging causes of action that were all untimely under the applicable statutes of limitation. A reasonable attorney would not have filed such meritless claims. (*Levy*, *supra*, 92 Cal.App.4th at p. 635.)

On the other hand, TriCo has not identified any evidence in the record before the trial court that " '*conclusively* demonstrates' " that the Marosis and Milks pursued the lawsuit in bad faith. (*Shelton*, *supra*, 94 Cal.App.4th at p. 1347.) The court may have been persuaded that, despite their causes of action being meritless, the Marosis and Milks were "acting in the good faith (albeit erroneous and even unreasonable) belief" that their claims were indeed meritorious. (*Summers*, *supra*, 225 Cal.App.3d at p. 1073.) Because the record before the trial court lacked conclusive evidence of bad faith and because we are not authorized to substitute our judgment for that of the trial court, we must affirm the trial court's order denying sanctions. (*Shelton*, at pp. 1345–1346.)

### III. DISPOSITION

We affirm the trial court's February 23, 2024 judgment, July 1, 2024 fee order, and July 1, 2024 sanctions order. We reverse the trial court's July 1, 2024 costs order and, on remand, direct the trial court to tax the $2,432.68

36

in requested costs for models, enlargements, and photocopies of exhibits. TriCo is entitled to its reasonable costs on appeal. (Cal. Rules of Court, rule 8.278(a)(3).)

_____
Danner, J.

WE CONCUR:




_____
Greenwood, P. J.




_____
Bromberg, J.




**H051989, H052427, H052506**
***Marosi v. TriCo Bancshares***